# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-KA-00996 COA

**J.W. WEBSTER**                                                   **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:              05/22/97
TRIAL JUDGE:                   HON. KENNETH LEVENE THOMAS
COURT FROM WHICH APPEALED:     COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        CHERYL WEBSTER
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: W. GLENN WATTS
DISTRICT ATTORNEY:             LAWRENCE Y. MELLEN
NATURE OF THE CASE:            CRIMINAL - FELONY
TRIAL COURT DISPOSITION:       MURDER: SENTENCED TO SERVE A TERM OF LIFE IN
                               THE MDOC; DEFENDANT IS ORDERED TO PAY
                               COURT COST IN THE AMOUNT OF $238 & CRIME LAB
                               FEE IN THE AMOUNT OF $600
DISPOSITION:                   AFFIRMED - 2/23/99
MOTION FOR REHEARING FILED:    3/4/99
CERTIORARI FILED:              5/3/99
MANDATE ISSUED:

BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.

BRIDGES, C.J., FOR THE COURT:

¶1. J.W. Webster was convicted in the Circuit Court of Coahoma County on May 22, 1997, of the crime of murder and was sentenced to serve life imprisonment in the custody of the Mississippi Department of Corrections. Aggrieved, Webster appeals raising the following issues:

**I. THE COURT DEPRIVED THE APPELLANT OF HIS RIGHT TO A FAIR TRIAL BY DENYING HIS RACE NEUTRAL REASON FOR STRIKING A JUROR AND ALLOWING**

**THE JUROR TO SIT ON THE JURY.**

**II. THE COURT ERRED IN ADMITTING IMPROPER EVIDENCE OF ANOTHER CRIME.**

**III. THE COURT FAILED TO PROPERLY INSTRUCT THE JURY.**

**IV. THE COURT DENIED THE APPELLANT'S RIGHT TO A FAIR TRIAL DUE TO CUMULATIVE ERRORS.**

Finding no error to the issues raised, we affirm.

FACTS

¶2. Webster was indicted and charged with the stabbing and killing of Bennie Rosebur on December 10, 1996. Webster testified that he went to Deloris LeFlore's house on July 5, 1996, to retrieve his lawn mower and several other items. LeFlore, her children, and Rosebur, her boyfriend, were preparing to move her to another house when Webster arrived. According to testimony, an altercation occurred between Webster and Rosebur, and LeFlore told Webster to leave and for her younger son to call the police. LeFlore testified that Webster picked up a beer bottle, but Michael, her oldest son, stepped in between Webster and Rosebur, and Webster was asked to leave. After Michael and Webster went downstairs and Webster allegedly left, Rosebur and Curtis, the younger son, followed. Rosebur then went outside to fix a chair while Curtis stood in the doorway and talked to him. At some point, according to the testimony of both Curtis and LeFlore, Webster was seen exiting the house with a knife. Curtis testified that Webster walked over to Rosebur and stabbed him in the left side of the neck. Curtis stated that he saw Rosebur attempt to stagger away, and Webster appeared to be chasing after him. Curtis then locked the door and ran upstairs. Webster initially tried to re-enter the house, but Curtis refused to let him in. Webster then left the scene, and Curtis and Michael put Rosebur in the car and took him to the hospital. LeFlore testified that she later flagged Webster down as he drove by in his car and stated, "I think you might have killed Bennie." LeFlore stated that Webster's response was that "if he had then he ought to be dead." After the police arrived, LeFlore pointed out Webster to the police, and Webster was given his rights and searched. Webster informed the police that he had been cut with the knife, and he was taken to the hospital for treatment. Webster was subsequently convicted of murdering Rosebur and was sentenced to life imprisonment.

ARGUMENT AND DISCUSSION OF LAW

**I. WHETHER THE COURT DENIED THE APPELLANT'S RIGHT TO A FAIR TRIAL WHEN IT REJECTED A PEREMPTORY STRIKE OF A JUROR, AND ALLOWED THE JUROR TO SIT ON THE JURY.**

¶3. Webster argues on appeal that he was denied a fair and impartial trial when the judge failed to allow him to use a peremptory strike on a white juror ("Juror No. 2"). Webster contends that he gave a race-neutral reason for striking the juror, and the judge erroneously rejected it. Specifically, Webster stated that he wanted to strike Juror No. 2 because his sister-in-law had sued the company that the juror worked for in a discrimination lawsuit. The State argues that Juror No. 2 stated in *voir dire* that he did not know either the

appellant or his attorney. Furthermore, the State contends that a black juror who shared the relevant characteristic of being an employee of the same company had not been struck. The court held that since the jurors were similarly situated, Webster failed to meet the State's *Batson* challenge. After the court made its ruling, Webster pointed out that Juror No. 2 worked at the company in a management position while the other juror worked in labor, and that another juror who allegedly was white and also worked for the same company had not been struck. According to the record, neither the State nor the court responded to the statement Webster made regarding racial identification.[(1)]

¶4. Two methods exist to enable a prosecutor or a defendant to challenge a prospective juror. The first method is a challenge for cause based on a specific reason that the judge must find to be legally sufficient. The second method, which necessarily involves a *Batson* challenge, is a peremptory challenge based on a statutory privilege to remove an otherwise statutorily qualified potential juror. Historically, a peremptory challenge could be exercised without reason, inquiry, or being subject to a court's control. *Swain v. Alabama*, 380 U.S. 202, 220 (1965), *overruled by Batson v. Kentucky*, 476 U.S. 79 (1986).

¶5. The Mississippi Supreme Court has established the following standard of review to which this Court must adhere when it reviews an allegation of error based on *Batson*:

> [A] reviewing court should give the trial court "great deference." "Great deference" has been defined in the *Batson* context as insulating from appellate reversal any trial findings which are not clearly erroneous.
>
> . . . .
>
> [A] trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence. This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies.

*Lockett v. State*, 517 So. 2d 1346, 1349-50 (Miss. 1987) (citations omitted).

¶6. Under *Batson*, in order for the defendant to raise a prima facie case that the prosecution has improperly struck a potential juror on the basis of race, it must be shown (1) that he is "a member of a cognizable racial group," and that the prosecution has "exercised peremptory challenges to remove from the venire members of the defendant's race"; (2) that the defendant is entitled to rely on the fact that peremptory challenges allow "those to discriminate who are of a mind to discriminate"; and (3) that "these facts and any other relevant circumstances raise an inference that the [State] used that practice to exclude the veniremen from the petit jury on account of their race." *Batson,* 476 U.S. at 96. *Batson* applies to peremptory challenges exercised by both the prosecution and the defendant. *Griffin v. State*, 610 So. 2d 354, 356 (Miss. 1992).

¶7. Once a defendant has made a prima facie case of purposeful discrimination, the burden then shifts to the State to announce race-neutral reasons for the exclusion of those people from the venire. *Batson,* 476 U.S. at 97. Where a trial court has ruled that a prosecutor's explanations were valid race-neutral reasons, the reviewing court will assume the prima facie requirement has been met. *Lockett,* 517 So. 2d at 1349; *see*

*also Hernandez v. New York*, 500 U.S. 352, 359 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). The State's explanation need not rise to the level of justification as required for a challenge for cause. *Harper v. State*, 635 So. 2d 864, 867 (Miss. 1994).

¶8. Additionally, the defendant is allowed to rebut the reasons which have been offered by the State. *Bush v. State*, 585 So. 2d 1262, 1268 (Miss. 1991). However, if the defendant offers no rebuttal, the trial court is forced to examine only the reasons given by the State. *Id.* The trial court must determine whether a discriminatory intent is inherent in the State's explanation. *Lockett*, 517 So. 2d at 1350. Additionally, the court must make an on-the-record factual determination of the merits for each of the State's race-neutral reasons for exercising peremptory challenges against potential jurors. *Hatten v. State*, 628 So. 2d 294, 298 (Miss. 1993). *Hatten* stated that once the State announces its race-neutral reason for exercising its peremptory challenge, the trial judge,

> in determining which explanations are sufficiently race-neutral and which are not, should give an equally "clear and reasonably specific" explanation for his ruling. As we also stated in *Lockett*, "[t]his perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies."

*Id.* at 299 (quoting *Lockett*, 517 So. 2d at 1350). When such a determination is made by the trial court, appellate reversal will not occur unless the trial court's findings are clearly erroneous or against the overwhelming weight of the evidence. *Bounds v. State*, 688 So. 2d 1362, 1367 (Miss. 1997). "Race-neutral explanations satisfy *Batson*, but only when they are not a smoke screen which a party is exercising to mask a discriminatory challenge." *Griffin v. State,* 607 So. 2d 1197, 1203 (Miss. 1992). One of the reasons the trial court is granted such deference when a *Batson* challenge is raised is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality. *Hernandez,* 500 U.S. at 365. The credibility of the one making the challenge is often decisive. *Id.*

¶9. In the case *sub judice*, Webster exercised his first five peremptory challenges on white jurors. Webster then attempted to strike Juror No. 2, and the State objected challenging the strike under *Batson* and its progeny. It is this Court's finding that determination of whether a *prima facie* case exists must focus on whether Webster was excluding *all or almost all* of the potential white jurors. Since that occurred here, an explanation was required. Webster then gave his explanation for striking Juror No. 2, and the court rejected it holding that it was not race-neutral. Webster attempted to further justify the strike, but the court refused to change its ruling.

¶10. As stated above, trust is placed in a trial judge to determine whether or not a discriminatory motive drives the reasons given for striking a potential juror. The determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. *Id.*; *Batson*, 476 U.S. at 98. Thus, trial courts are given great deference in their findings of fact surrounding a *Batson* challenge. *Lockett*, 517 So. 2d at 1350. This deference specifically includes a trial judge's determination of any racially discriminatory motive underlying any articulated reasons given. *Harper*, 635 So. 2d at 868. The following dialogue occurred between the parties when Webster attempted to strike Juror No. 2:

> BY MR. ROSSI: Your Honor, the State would challenge under [*Batson*] and its progeny. The

defense's strikes, they have levied a total of five strikes striking all white jurors with those five strikes and several of these jurors have not responded to any questions regarding any of the things that the Court or the attorneys asked in the open court, to differentiate them from any other jurors that are left on the panel.

BY THE COURT: All right. Ms. Webster, what is your reasons for striking D-1 which is Juror No. 2?

BY MS. WEBSTER: Oh, Morris Favi, is because I had sued Cooper Tire when he was plant manager for discrimination and that the party that I had sued him for, I believe, was Anna Webster.

BY THE COURT: Who is Anna Webster?

BY MS. WEBSTER: Anna Webster is J.W. Webster's sister-in-law and I won. And so I would strike Morris Favi because of that particular conflict.

. . . .

BY MR. ROSSI: First of all Mr. Favi was asked whether or not he knew Mr. Webster, the attorney, and he indicated he did not. The fact that he works at a company that has been sued by Ms. Webster, and I don't doubt that she has represented she has sued that company, that [she has] is not grounds to then strike Mr. Favi. I further point out that there are other Cooper Tire employees who are on the list, who are black, who have not been struck.

BY MS. WEBSTER: Well, he was the plant manager, I believe, at the time.

BY THE COURT: In view of the fact that there are other jurors similarly situated, Ms. Webster, who were not stricken and those other jurors being white[2] and the first one that I see is Henry Larry, the Court reinstates Juror No. 2 who becomes our first juror.

BY MS. WEBSTER: Did you say Henry Larry was white?

BY MR. ROSSI: No, Henry Larry, I believe is black.

BY THE COURT: Is a black person who works at the same company who was not stricken.

BY MS. WEBSTER: Well, yes, but I have no idea that he was even working there at the time when the lawsuit took place.

BY THE COURT: Okay. Well, you may make exception to the Court's ruling but the Court has ruled. . . .

¶11. As stated in the aforementioned, Webster gave additional reasons to justify the strike after the judge's ruling stating that he had accepted a white juror who was an employee of the same company, and that Juror No. 2 was in management with the company and the other jurors from the same company were not. However, the trial judge did not change his ruling. After careful review of the limited information contained in the record before us, it is this Court's finding that the trial judge's determination of this issue warrants our giving him "great deference" in his determination. Since his ruling was not clearly erroneous or against the overwhelming weight of the evidence, we find this issue to be meritless.

**II. WHETHER THE COURT ERRED IN ADMITTING EVIDENCE OF ANOTHER CRIME**.

¶12. Webster argues on appeal that the court erred in allowing evidence of other crimes to be admitted under M.R.E. 404(b) since no rational argument could be made that a fight that took place almost a year before the murder provided the motive or intent for the murder. Furthermore, even if allowed under M.R.E. 404(b), Webster argues that the court erred in allowing the evidence to be admitted since the court never made an on-the-record determination of the "probative value versus the prejudicial effect" according to M.R.E. 403. Prior to trial, Webster objected in an attempt to prevent this evidence from being admitted arguing that the testimony was too remote in time and that it was too prejudicial, but the objection was overruled. In addition, Webster contends that since the court also failed to properly instruct the jury as to the limited purpose for which they were allowed to consider the other bad act evidence, his conviction must be reversed and remanded for a new trial. *See Smith v State,* 656 So. 2d 95, 100 (Miss. 1995).

¶13. The State contends that the record did indicate that the court found the prior conviction for prior assault was not more prejudicial than probative in this case. Specifically, the State contends that the court found that the prior conviction was relevant to show intent since Webster was claiming that Rosebur was the aggressor and that Webster was only acting in self-defense.

¶14. Generally, evidence of a crime other than the one for which the accused is being tried is not admissible. *Ballenger v. State,* 667 So. 2d 1242, 1256 (Miss. 1995). Prior convictions or wrongful acts may not imply that the defendant is the type of person likely to commit the crime charged. *Jenkins v. State,* 507 So. 2d 89, 92 (Miss. 1987). However, such evidence may be admitted for other evidentiary purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident pursuant to M.R.E. 404(b). *See Robinson v. State,* 497 So. 2d 440, 442 (Miss. 1986). Evidence of other crimes, wrongs, or acts is admissible if the present case and the other offense are "so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Neal v. State,* 451 So. 2d 743, 759 (Miss. 1984). The rationale for admitting evidence of certain closely related acts is that the State "has a legitimate interest in telling a rational and coherent story of what happened. . . ." *Brown v. State*, 483 So. 2d 328, 329 (Miss. 1986) (citations omitted). If evidence of other bad acts is deemed relevant under M.R.E. 404(b), then the court must then determine whether the probative value of the evidence is substantially outweighed by the considerations of M.R.E. 403. *Lester v. State,* 692 So. 2d 755, 779 (Miss. 1997). It is in the trial judge's discretion to determine the relevancy of the evidence, and his decision will not be reversed unless there is a clear abuse of discretion. *Bounds,* 688 So. 2d at 1369.

¶15. In the case at bar, Webster made a timely objection prior to the admission of his prior conviction of simple assault. The court made an on-the-record determination that the evidence was admissible to show motive and intent, and further stated that the evidence was admissible because the probative value outweighed the prejudicial effect. The pertinent part of the record reads as follows:

> BY MR. ROSSI: That's what I want to bring up right now, Your Honor. The State wanted to inform you ahead of time so that it did not come as a surprise to Your Honor in the courtroom. Ms. Webster already has discovery on this and is aware of this. The defendant has a conviction for simple assault

here in Coahoma County approximately two months prior to the murder. He got in a fight and beat up, attacked however you want to determine it, the victim and was convicted of that for simple assault. The State intends to offer that in its case-in-chief for twofold purpose. One, and the primary reason in my case-in-chief is that under 404(b) it goes to motive and intent for this defendant for attacking the victim on the day of the alleged murder. There was-he disliked him is what the proof would show.

. . . .

BY THE COURT: Was this simple assault matter a part of the criminal record?

BY MR. ROSSI: Yes, Your Honor.

. . . .

BY MS. WEBSTER: [B]ut it is so prejudicial to my client. I mean it has absolutely nothing to do with the altercation that happened in July of - let's see. This, according to what they tell me. All right. The murder took place in July of 1996.

BY THE COURT: And the altercation, the simple assault altercation?

BY MS. WEBSTER: The simple assault altercation took place in September of 1995.

. . . .

BY THE COURT: So your argument is too remote in time?

BY MS. WEBSTER: Well, it's too remote in time and it's terribly prejudicial.

BY MR. ROSSI: [T]he defendant in this case was convicted of simple assault on May the 23rd of 1996 for his altercation with the victim in this case, Benny Rosebur. He on a prior occasion got into a fight with the victim. The purpose that's being offered for is to show that he disliked the victim. He had a motive. He had a reason. He had intent to fight him on another occasion, that being the day of the murder.

Secondly, the defense has tendered witnesses and intends to offer proof. I think it's very clear that they intend to offer proof that the victim is the aggressor, the defendant is a peaceful man, and this charge secondly addresses that issue as well. It shows motive. It shows intent. It shows a reason. There was bad blood between them. He disliked him. He disliked the victim.

Secondly, it goes to the peaceful, the alleged peaceful nature of the defendant and the aggressor allegation of the victim.

BY THE COURT: Well, Mr. Rossi, all of that goes to your rebuttal evidence but since you have disclosed this information to the defendant, the Court will allow it during your case-in chief.

BY MS. WEBSTER: And you'll note my objection. I think it's way too prejudicial, too remote in time, way too prejudicial.

. . . .

BY THE COURT: -remote in time and even dating back to May 23rd of last year is less than a year, less than a year about three days but less than a year nevertheless.

The Court does not find that to be too remote in time under the circumstances in terms of the contention that it's very prejudicial. I guess all the evidence is.

BY MS. WEBSTER: Well, Your Honor, under rule 403, I think it should be excluded. If you determine that it's relevant, then I move that it be excluded substantially -

BY THE COURT: That the probative value is outweighed by the prejudicial affect? Okay.

BY MS. WEBSTER: Oh, yes, it's unfair prejudice. It's a confusion of the issues. It misleads the jury. I mean here to defend one crime and one crime only and that is the crime of murder, and I think that to allow this evidence in will be misleading the jury, confusing the jury and has substantial prejudicial affects. And I think that the probativeness of the evidence is far outweighed or it should be excluded, certainly it should be excluded because of the prejudicial affect under Rule 403.

BY THE COURT: Well, this is one of the ways by which the State may prove intent. Well, anyway the Court has ruled, Ms. Webster, and your point has been taken. You want to be on the record and your objection is noted and if the Court is in error, of course, it could be cured on appeal.

¶16. It is this Court's finding that the trial court properly admitted the testimony under Rule 404 (b) because it indicated both a possible motive and showed intent. Furthermore, the trial court did make an adequate on-the-record finding regarding relevancy under Rule 403. Lastly, Webster is correct; no limiting instruction was sought or given by the court *sua sponte*. "Although *Smith* held it reversible error for the court not to give a limiting instruction *sua sponte*, neither *Smith* or any other case on point that had this type of error held that this oversight is not subject to a harmless error analysis." *Moss v. State*, 97-KA-00331-COA (¶23)(Miss. Ct. App. 1998). In *Given v. State,* 96-KA-00650-COA (¶33)(Miss. Ct. App. 1998), this Court cited *Forrest v. State,* 335 So. 2d 900, 903 (Miss. 1976), where the supreme court stated, "An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." (citations omitted).

¶17. In the case *sub judice*, the State presented the evidence of LeFlore's younger son, Curtis, who witnessed Webster fatally stab Rosebur. Curtis testified that his mother asked Webster what he was getting the knife for, and then Webster walked outside with a knife behind his back. Curtis stated that he "saw him stick [Rosebur] in the neck." Curtis then locked the door and shouted to his mother that Webster had just stabbed Rosebur. In *Williamas v. State,* 427 So. 2d 100, 104 (Miss. 1983), our supreme court held that jurors may accept or refuse testimony of witnesses stating, "It is not for this Court to pass upon credibility of witnesses and where the evidence justifies the verdict it must be accepted as having found worthy of belief." Further, in *Dolby v. State,* 532 So. 2d 584, 590 (Miss. 1988), the court held that the testimony of a single witness is sufficient to support a conviction. As to matters upon which the evidence was in conflict, the court should assume that the jury resolved the conflict in a manner consistent with the verdict. *Gossett v. State,* 660 So. 2d 1285, 1294 (Miss. 1995).

¶18. Therefore, this Court finds that in view of the overwhelming evidence against Webster, the trial court's failure to *sua sponte* to give a limiting instruction about Webster's prior bad acts was harmless error. However, we find it necessary to repeat what Judge Coleman stated in *Givens,* "Lower courts and

prosecuting attorneys must not commit errors on the speculation that the Supreme Court [or the Court of Appeals] will affirm on the ground of harmless error." (*Givens,* 96-KA-00650-COA at ¶11) (quoting *Townsend v. State,* 605 So. 2d 767, 771 (Miss. 1992)). This issue is without merit.

## III. WHETHER THE COURT ERRED IN DENYING THE APPELLANT'S JURY INSTRUCTION D-2.

¶19. Webster argues on appeal that the court erred in denying his proposed instruction D-2. In support of his contention, Webster argues that he should have been allowed to submit instructions on both self-defense and excusable homicide since the self-defense instruction justified the position he was in and the excusable homicide instruction advised the jury of the result of that position. The State argues that although Webster was entitled to an instruction concerning his defense, he cannot claim both self-defense and accident. Furthermore, the State contends that there was no evidentiary basis for an accident instruction.

¶20. Instruction D-2 reads as follows:

> The killing of a human being is an excusable homicide if the defendant's act which caused the death of Bennie Rosebur was a result of an accident and misfortune in doing a lawful act by lawful means with usual and ordinary caution and without unlawful intent. If Bennie Rosebur's death was caused by the stabbing of the knife accidentally when it was hit by the defendant's stick during the incident and that the defendant used usual and ordinary caution and had no unlawful intent, then the homicide is excusable.

> If you do find that the stabbing was accidental and thus excusable, then you shall find for the defendant and return a verdict of not guilty.

¶21. Instruction S-1, which was given, reads as follows:

> The defendant, J.W. Webster, has been charged by an indictment with the crime of murder for having caused the death of Bennie Rosebur.

> If you find from the evidence in this case beyond a reasonable doubt that:

> (1) On or about July 5, 1996, Bennie Rosebur was a living person, and

> (2) the defendant, J.W. Webster, acted in a manner imminently dangerous to others and envincing a depraved heart, regardless of human life, and without authority of law

> (3) by stabbing the said Bennie Rosebur in the upper chest with a knife,

> (4) that resulted in the death of Bennie Rosebur, then you shall find the defendant,

> J.W. Webster, guilty of murder.

If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty.

¶22. Failure to give a jury instruction is reversible only if the instruction was substantially correct, was not substantially covered by other instructions actually delivered, and concerned a point at trial so that failure to

give it seriously impaired the defendant's ability to present a given defense. *U.S. v. Andrews*, 22 F. 3d 1328, 1345 (5th Cir. 1994). Furthermore, our law is well settled that jury instructions are not given unless there is an evidentiary basis in the record for such. *Dedeaux v. State,* 630 So. 2d 30, 33 (Miss. 1993).

¶23. In the case at bar, no facts or evidence appeared in the testimony that the killing occurred both by self-defense and by accident. Webster testified that since Rosebur was outside with a knife, he grabbed a butter knife when he attempted to leave, and that the two of them began to chase each other around. Webster stated that realizing that the butter knife would not protect him, he grabbed a stick that was on the ground. Webster stated that as they were fighting each other, the next thing he saw was blood coming from Rosebur's chest. Webster testified that Rosebur stabbed himself during the altercation; however, testimony from Curtis and the state pathologist contradicted Webster's account of what actually took place. Curtis testified that as he was standing in the doorway, Webster walked past him with a butcher knife behind his back, approached Rosebur from behind, and stabbed him in the neck. Dr. Stephen Hayne, the medical examiner, testified that Rosebur's fatal stab wound would have been consistent with being stabbed from behind if the assailant was right-handed. Dr. Hayne stated:

> [T]he stab wound to the decedent traveled slightly to the left and normally stab wounds, if they're being inflicted from the front by a right-handed person, usually travels slightly to the left at approximately 10 degrees as well as going downward at approximately 60 degrees. So it would be consistent with a stab wound from behind.

Moreover, on cross-examination, Dr. Hayne testified that he did not believe that Rosebur could have stabbed himself. His testimony, in pertinent part, reads as follows:

> Q: And could the fatal wound- I'll ask a hypothesis. If Bennie Rosebur had a knife in this hand and it was hit with such great force, could it have been forced into him at such great force that the wound would have been caused by the knife in this hand?
>
> A: The only way I could conceive of that occurring, if someone took his hand and then drove his hand into his chest.
>
> Q: All right. Could they have hit it with such great force with say a stick to have hit it to go in?
>
> A: I do not believe so, no.
>
> Q: You don't think that it's possible to hit someone with such force that you could drive it into them like a stake?
>
> A: It is possible to strike a person with enough force to drive a hand-holding knife into the body. However, in this case, I would expect to see the external injuries on the right upper extremity, the right hand, the fingers of the right hand, the forearm of the right upper extremity or the right arm indicating that that type or force had been applied to the extremity allowing for the stab wound of the chest as you describe, and I did not see that.

Therefore, it is this Court's finding that there was no evidentiary basis capable of supporting a factual finding that Webster had accidentally stabbed Rosebur under such circumstances, and the requested jury instruction was properly denied.

**IV. WHETHER THE ALLEGED CUMULATIVE ERRORS AT TRIAL CONSTITUTED A VIOLATION OF THE APPELLANT'S RIGHT TO A FAIR TRIAL.**

¶24. Webster argues on appeal that the cumulation of errors in the trial, if not taken as error sufficient to reverse and remand for a new trial individually, are sufficient to reverse and remand if taken as a whole. Webster cites to *Jenkins v. State*, 607 So. 2d 1171, 1183 (Miss. 1992), where the supreme court stated, "This Court has often ruled that errors in the lower court that do not require reversal standing alone may nonetheless taken cumulatively require reversal." However, "where there was no reversible error in any part, so there is no reversible error to the whole." *Coleman v. State,* 697 So. 2d 777, 787 (Miss. 1997). Each of Webster's complaints combined cumulatively was not such as to deny Webster a fundamentally fair trial. This is not one of those rare cases requiring reversal on the ground that cumulative effect of all errors deprived the defendant of a fair trial. Accordingly, we find no merit to this issue.

¶25. **THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF THE CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.**

**McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, LEE, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. After reviewing the record, it is apparent that the jury list failed to contain any information about the racial identity of the jurors. The document contained an unalphabetized list of the jurors which included only their names, addresses, ages, and occupations. The only other reference to a juror's racial identity in the record were the comments made by the State and Webster.

2. It is apparent from the record that the trial judge mistakenly said "white" when he meant to say "black."