# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01648-SCT

*J .W. WEBSTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/27/2000 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/14/2002 |
| MOTION FOR REHEARING FILED: | 3/15/2002; denied 6/6/2002 |
| MANDATE ISSUED: | 6/13/2002 |

### BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.

### EASLEY, JUSTICE, FOR THE COURT:

¶1. J.W. Webster ("Webster") was previously convicted on May 22, 1997, in the Circuit Court of Coahoma County, Honorable Kenneth L. Thomas, Circuit Judge, presiding, for the murder of Bennie Rosebur ("Rosebur") and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. *See Webster v. State*, 755 So.2d 451 (Miss. Ct. App. 1999). Webster appealed to the Mississippi Court of Appeals which affirmed the judgment and found that (1) the trial court's ruling to reject a peremptory strike of a juror was not clearly erroneous or against the overwhelming weight of the evidence; (2) the trial court properly admitted testimony that indicated possible motive and showed intent under M.R.E. 404(b), the judge made an on the record determination regarding relevancy in accordance with M.R.E. 403, and the trial court's failure to *sua sponte* give a limiting instruction about the prior bad acts was harmless error; (3) an accident instruction to the jury was properly denied; and (4) the cumulative effect of all errors did not deprive the defendant of a fair trial. *Id.* The motion for rehearing was denied by the Court of Appeals on April 20, 1999. *Id*.

¶2. This Court granted a writ of certiorari. On January 27, 2000, this Court reversed and remanded for a new trial as to the peremptory challenge issue only. *Webster v. State*, 754 So.2d 1232, 1240 (Miss. 2000). As to the other two issues, this Court affirmed the Court of Appeals and stated "We further hold that the Court of Appeals was correct in finding that the trial court's failure to *sua sponte* give a limiting instruction was harmless error and that there was not a sufficient evidentiary basis for the trial court to give an accident instruction. Therefore, we affirm on these two issues." *Id*.

¶3. On July 24-27, 2000, a retrial was conducted, Circuit Court Judge Thomas, presiding. On July 27, 2000, Webster, again, was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. Webster filed an amended motion for new trial. On August 22, 2000, the trial judge entered an order denying the amended motion for new trial. Webster now appeals to this Court.

## FACTS

¶4. On July 5, 1996, Deloris Leflore ("Leflore") was moving from 526 Bolivar Street to a new address in Clarksdale. Leflore's boyfriend at the time was Rosebur. Leflore had been dating Rosebur for about a year and had previously dated Webster for approximately thirteen to fourteen years.

¶5. Webster came to the house and wanted his lawn mover that he lent to Leflore's oldest son, Michael. Leflore next heard an argument in the upstairs den. When she arrived at the den, Webster claimed that Rosebur pulled a knife on him. Rosebur claimed that Webster had pushed him, which Webster denied. Leflore asked Webster to leave and told Rosebur to put away his knife, which was at his side. Rosebur put away the knife, and the two men continued to argue. Leflore asked her younger son, Curtis, to call the police because Webster would not leave the house. Michael took Webster downstairs, and both left the house. Later, Curtis and Rosebur went downstairs, and Rosebur went to get some wood to repair a chair.

¶6. Leflore went into the kitchen, and Webster came into the kitchen. Webster went to the dish rack and told Leflore that Rosebur had pulled a knife on him. Leflore saw Webster take a brown-handled knife and stick it in the back of his pants. The knife was a butcher knife used for cutting meat. After Webster walked out the front door, Leflore ran upstairs to call the police.

¶7. Webster rushed past Curtis, who was standing in the doorway. Curtis testified that Rosebur had his back facing him and Webster stuck Rosebur with the knife on his left side. Curtis yelled to his mother that Webster stabbed Rosebur. From a window on her stairwell, Leflore saw Webster chasing Rosebur in the yard. Curtis then shut the door and locked it and ran upstairs to call the police. Webster later knocked on the door and asked to be let in the house, but Curtis refused. After Webster left, Curtis followed the blood trail to the store up the street. Rosebur was lying on the store porch. Then, Curtis saw his brother Michael drive by in a car, flagged him down, and told him that they needed to bring Rosebur to a hospital.

¶8. Leflore and her daughter Shunta ran to the store. When they arrived, Michael and Curtis had Rosebur in a car and took him to the hospital. As Leflore and Shunta returned home, Webster drove by in his car. Leflore flagged down Webster and said "J.W., I think you might have killed Bennie." According to Leflore, Webster replied "Well, if I have, he should be dead."

¶9. Officer Norman Starks ("Officer Starks") was on duty with the Clarksdale Police Department on July 5, 1996. He responded to a dispatch call concerning a stabbing at 526 Bolivar Street in Coahoma County, Mississippi. Neither the victim nor the defendant was at the scene. About fifteen minutes later, Webster walked back toward the house. Shunta, Leflore's daughter, pointed out Webster to the officers as he walked down the street. The officers detained Webster as a suspect at that time. Webster had a cut under his right arm and was taken to the hospital for treatment.

¶10. Dr. Steven Hayne ("Hayne"), state forensic pathologist, testified that Rosebur had two stab wounds located over the left chest and front surface of the elbow. The stab wound to the chest was lethal. The stab wound to the elbow indicated a defensive posturing position. DNA testing of blood samples from the knife

and knife holder were consistent with Rosebur's DNA type. None of the samples had Webster's blood or DNA on it.

¶11. The December 10, 1996, indictment against Webster stated:

> J.W. WEBSTER, ...on or about July 5, 1996,...did unlawfully, willfully, and feloniously, without the authority of law, kill and murder Bennie Rosebur in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life, although without any pre-meditated design to effect the death of Bennie Rosebur...

¶12. At trial, Webster testified on his own behalf and denied ever stabbing Rosebur. In addition, Webster testified to getting a butter knife as opposed to a butcher knife from the kitchen sink. Webster stated that Rosebur had his knife open. Webster stated that Rosebur told him "I'm going to get your damn ass." He claimed that he did not stab Rosebur, who was stabbed with his own knife. Webster stated that he never intended Rosebur to die on July 5. On July 27, 2000, Webster was sentenced to life imprisonment, and he now appeals.

## STATEMENT OF THE ISSUES

**I. Whether appellant's murder conviction is against the overwhelming weight of the evidence.**

**II. Whether appellant killed the deceased in self-defense.**

**III. Whether the trial court erred in failing to grant appellant's motion for mistrial after allowing the State to elicit evidence of the appellant's prejudicial prior bad acts.**

## DISCUSSION

**I. Whether the overwhelming weight of the evidence supports the murder conviction.**

¶13. In the first issue, Webster asserts that his murder conviction is against the overwhelming weight of the evidence. In the second issue, Webster asserts that the overwhelming weight of the evidence supports a finding of self-defense. "It is well established that matters regarding the weight of the evidence are to be resolved by the jury. *Danner v. State*, 748 So.2d 844, 846 (Miss. 1999)(citing *Neal v. State*, 451 So.2d 743, 758 (Miss. 1984)). Whether a slaying is considered either murder or manslaughter is a question for the jury. *Windham v. State*, 520 So.2d 123, 127 (Miss. 1987). As to a claim of self-defense, the jury is the ultimate judge of whether the defendant acted in a manner to justify self-defense. *Rush v. State*, 278 So.2d 456, 459 (Miss. 1973). "The court is bound by the jury findings upon an issue presented by the instruction requested by the [defendant]." *Kinney v. State*, 336 So.2d 493, 496 (Miss. 1976).

¶14. In a jury trial, as the case before the Court today, the jury determines whether the defendant committed murder, manslaughter or acted in self-defense based on the testimony and evidence presented by counsel. This Court has restricted authority to interfere in the province of the jury verdict. *McFee v. State*, 511 So.2d 130, 133 (Miss. 1987). The jury in Webster's case returned a unanimous verdict of guilty of murder. Accordingly, this Court is bound to review the weight of the evidence in regard to the verdict of murder only and cannot review, as Webster requests, a lesser-included offense of manslaughter nor a theory of self-defense. The jury already made a determination on whether Webster was guilty of

murder, manslaughter or acted in self-defense. Therefore, this Court will only review the record to determine whether there is sufficient evidence to support the jury verdict of murder. Webster's second issue concerning a self-defense issue is not appropriately before this Court to review and will not be addressed.

## Standard of Review

¶15. A motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if trial lower court abused its discretion in denying a motion for new trial. *Id*.(citing *Gleeton v. State*, 716 So.2d 1083 (Miss. 1998)). This Court held in *McFee*, that it has limited authority to interfere with a jury verdict. *McFee*, 511 So.2d at 133. The court looks at all the evidence in the light that is most consistent to the jury verdict. *Id*. The prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*.

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgement might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. *Id*. at 133-34.

*See also May v. State*, 460 So.2d 778, 781 (Miss.1984). This Court has held that a new trial will not be given unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983); *see also Danner*, 748 So.2d at 846. However, if a jury verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial. *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998).

¶16. As to the credibility of witnesses, this Court in *Gathwright v. State*, 380 So.2d 1276 (Miss. 1980), has held that "in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court." *Gathwright*, 380 So.2d at 1277 (citing *Davis v. State,* 320 So.2d 789 (Miss.1975)).

¶17. In his amended motion for new trial, Webster claimed that the jury verdict was against the weight of the evidence. The trial court denied the motion for new trial.

¶18. Clearly, the issue of whether Webster may have committed murder, manslaughter or acted in self defense is a question for the jury. *Danner*, 748 So.2d at 846. The jury was given a murder instruction, S-1; manslaughter instructions, C-20 and S-2; and self-defense instructions D-11A and S-3 by the trial court. After considering the trial testimony and the instructions and after deliberations, the jury found Webster guilty of murder.

¶19. The testimony in the case sub judice was that Leflore had dated Webster in the past and was dating Rosebur on July 5, 1996. Webster and Rosebur had an argument that day in the upstairs den of Leflore. Rosebur claimed that Webster pushed him and Webster claimed the Rosebur drew a knife. Leflore asked Webster to leave and told Rosebur to put away his knife. Leflore and her son Curtis were under the impression that Webster had left the house with Michael, Leflore's oldest son. Curtis and Rosebur went downstairs. Rosebur began to fix a chair, and Curtis stood in the doorway of the house. Leflore went to the kitchen and saw Webster take a brown-handled knife, used to cut meat, from the dish rack and place it in

the back of his pants. Webster rushed past Curtis, who was standing in the doorway. Curtis saw Webster strike Rosebur with the knife on his left side. Curtis yelled to his mother that Webster stabbed Rosebur. The two men chased one another in the yard.

¶20. After her sons took Rosebur to the hospital, Leflore flagged down Webster and said "J.W., I think you might have killed Bennie." Webster allegedly replied "Well, if I have, he should be dead."

¶21. Later, Officer Hill testified that he found Rosebur's knife and scabbard in his rear pants pocket. The knife was closed and inside the scabbard, which was snapped shut. In addition, the forensic pathologist stated that Rosebur had two stab wounds located over the left chest and front surface of the elbow. The stab wound to the chest was lethal, while the wound to the elbow indicated a defensive posturing position. DNA testing of blood samples from the knife and knife holder were consistent with Rosebur's DNA type. None of the samples had Webster's blood or DNA on them.

¶22. As previously noted, the issue presented is a question for the jury. In this case, the jury had the option to find Webster not guilty; guilty of murder or manslaughter; or that he acted in self defense. The jury found Webster guilty of murder. Based on the testimony presented at trial, a reasonable hypothetical juror could have found that Webster committed murder and that his actions were not manslaughter nor done in self-defense. Therefore, the trial court did not abuse its discretion in denying the amended motion for new trial. Accordingly, this issue without merit.

### II. Whether the trial court committed error in failing to grant appellant's motion for mistrial after allowing the State to elicit evidence of the appellant's prejudicial prior bad acts.

¶23. Webster next complains that the trial court erroneously admitted evidence of a prior bad act. The admission of this evidence, Webster claims, was prejudicial and was not outweighed by its probative value. Further, Webster claims that the State failed to prove motive. While the judge took "judicial notice" of a prior ruling in the first trial, Webster alleges that the trial judge failed to conduct an on-the-record balancing analysis to determine if the probative value outweighed the prejudicial effect of the evidence. Webster requests that the conviction be overturned or, in the alternative, a new trial.

¶24. In September 1995 Webster and Rosebur were involved in an altercation which resulted in Webster's conviction of simple assault in May, 1996. In Webster's first trial, the Court of Appeals held that "the trial court properly admitted the testimony under Rule 404(b) because it indicated both a possible motive and showed intent. Furthermore, the trial court did make an adequate on-the-record finding regarding relevancy under Rule 403." *Webster v. State*, 755 So.2d at 459. The trial court failed to give a limiting instruction, however, this Court found the error to be harmless. *Id*. Webster filed a Petition for Writ of Certiorari which this Court granted. *Webster v. State*, 754 So.2d 1232 (Miss. 2000). While this Court reversed and remanded on other grounds, the issue of whether the trial court properly admitted evidence of the prior bad act without a limiting instruction was affirmed. *Id*.

¶25. The evidence during the second trial was introduced by a taped statement given by Webster to police. Later, the certified copy of Webster's prior conviction was introduced before Curtis Leflore testified. The trial court gave a limiting instruction to the jury.

### Standard of review

¶26. "Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of

review for denial of a motion for mistrial is abuse of discretion." ***Pulphus v. State***, 782 So.2d 1220, 1222 (Miss. 2001)(citations omitted); ***Hoops v. State***, 681 So.2d 521 (Miss. 1996); ***Johnson v. State***, 666 So.2d 784, 794 (Miss. 1995). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused it discretion." ***Bass v. State***, 597 So.2d 182, 191 (Miss. 1992).

¶27. In the case sub judice, Webster makes the same argument concerning the admission of the prior bad act today as in his first trial. Rule 404(b) states:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. **It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.**

(emphasis added). Usually, evidence of another crime is not admissible. ***Ballenger v. State***, 667 So.2d 1242, 1256 (Miss. 995). However, this Court has held that evidence of a prior crime or act may be admitted to show identity, knowledge, intent, or motive. ***Robinson v. State***, 497 So.2d 440, 442 (Miss.1986); ***Carter v. State***, 450 So.2d 67 (Miss. 1984). *See also* M.R.E. 404(b).

¶28. In ***Skinner v. State***, 700 So.2d 1183, 1184 (Miss. 1997), this Court relying on Mississippi Rules of Appellate Procedure 17(f) stated:

> After the Court of Appeals has decided a case, the litigants have a single opportunity to have this Court address possible errors which are amendable to certiorari review. Our decision to grant or deny *certiorari* is not subject to rehearing or reconsideration.

M.R.A.P. 17(f) reads as follows:

> (f) Reconsideration Not Permitted. Neither an acceptance nor a rejection or a petition for certiorari shall be subject to further pleading by a party for rehearing or reconsideration. Prior to final disposition, the Supreme Court may, on its own motion find that the petition for certiorari was improvidently granted and may dismiss the certiorari proceeding.

¶29. The doctrine of res judicata is a doctrine of public policy designed to avoid the expense of multiplicity of litigation and foster reliance on judicial action by "minimizing possibilities of inconsistent decisions." ***Little v. V& G Welding Supply, Inc.***, 704 So.2d 1336, 1337 (Miss. 1997)(quoting ***Montana v. United States***, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979)).

¶30. For the doctrine of res judicata to generally be applicable to a proceeding, four (4) identities must be present to prevent re-litigation of all issues tried in the prior lawsuit, as well as, all matter which should have been litigated and decided in the initial suit. ***Dunaway v. W. H. Hopper & Associates, Inc.***, 422 So.2d 749, 751 (Miss. 1982); ***Pray v. Hewitt***, 254 Miss. 20, 179 So.2d 842 (1965); ***Golden v. Golden***, 246 Miss. 562, 151 So.2d 598 (1963).

¶31. The four identities are as follows:

> (1) identity of the subject matter of the action

> (2) identity of the cause of action

(3) identity of the parties to the cause of action

(4) identity of the quality or character of a person against whom the claim is made.

*Dunaway*, 422 So.2d at 751; *Mississippi Employment Sec. Comm'n v. Georgia-Pac. Corp.*, 394 So.2d 299 (Miss. 1981); *Cowan v. Gulf City Fisheries, Inc.*, 381 So.2d 158 (Miss. 1980); *Standard Oil Co. v. Howell*, 360 So.2d 1200 (Miss. 1978).

¶32. Under the principle of law denominated as the doctrine of res judicata, Webster may not relitigate these issues. *See, e.g.*, *Holland v. State*, 705 So.2d 307, 325 (Miss. 1997)("We hold that because of the finding of guilt by the prior jury, Holland is barred by res judicata from re-litigating the prior jury verdict of guilt and is collaterally estopped in these proceedings from attacking his guilt."); *Jones v. State*, 517 So.2d 1295, 1297 (Miss. 1987)("The three assignments above were covered in the first appeal and were decided adversely to the appellant. That decision constitutes the law of the case and the assignments are barred on the present appeal.").

¶33. In the case sub judice, counsel for Webster admitted that there was no new evidence or information to determine if the probative value outweighed the prejudicial effect of the evidence. The evidence was the same; and therefore, the issue is barred by the doctrine of res judicata. In addition, it is important to note that the trial court adopted this Court's and the Court of Appeals' prior holdings on this issue both in admitting the evidence and on the motion for new trial. Accordingly, this issue is without merit.

## CONCLUSION

¶34. The overwhelming weight of the evidence supports the jury verdict of murder. Therefore, the trial court acted within its discretion and appropriately in denying a new trial in this case. Given the jury's verdict of murder, the issue of whether the evidence supports a lesser-included offense of manslaughter or a theory of self-defense is not properly before this Court and thus is not reviewed. Finally, the trial court acted within its discretion in denying a motion for mistrial based on the admission of Webster's prior bad acts where the issue was previously determined by the Court of Appeals and this Court, on writ of certiorari, to have been properly admitted to show possible motive and intent. *Webster v. State*, 755 So.2d at 457-60; *Webster v. State*, 754 So.2d at 1238-40.

¶35. For these reasons, the judgment of the Coahoma County Circuit Court is affirmed.

¶36. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SAID SENTENCE TO RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ.,CONCUR.**