## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-00996-SCT

*J.W. WEBSTER*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/97 |
| TRIAL JUDGE: | HON. KENNETH LEVENE THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHERYL WEBSTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 1/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/17/2000 |

## EN BANC.

## PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. J.W. Webster was convicted in the Circuit Court of Coahoma County of murder and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Webster appealed and his case was assigned to the Court of Appeals, which affirmed his conviction. He subsequently filed a Petition for Writ of Certiorari which was granted by this Court. Because the trial court erroneously found that Webster used his peremptory strikes in a racially motivated manner, we reverse and remand for a new trial.

### FACTS

¶2. On July 5, 19996, Deloris LeFlore, her children, and Bennie Rosebur, her boyfriend, were in the process of moving LeFlore to another house when Webster, according to his testimony, arrived to retrieve his lawn mower and several other items. LeFlore told Webster to leave after an altercation between Webster and Rosebur. LeFlore also told her younger son to call the police. Webster then picked up a beer bottle, but LeFlore's oldest son Michael intervened, and Webster was again asked to leave.

¶3. After it appeared that Webster had left, Rosebur went outside to fix a chair while LeFlore's younger

son, Curtis, stood in the doorway and talked to him. Curtis and LeFlore both testified that Webster was subsequently seen exiting the house with a knife. According to Curtis' testimony, Webster walked over to Rosebur and stabbed him in the left side of the neck. Curtis further testified that as Rosebur attempted to stagger away, Webster appeared to be chasing after him.

¶4. After Curtis locked the door and ran upstairs, Webster tried to re-enter the house, but was unable to get in. Webster then left the house, and Curtis and Michael put Rosebur in the car and took him to the hospital. LeFlore testified that she later flagged Webster down as he drove by in his car and stated, "I think you might have killed Bennie." LeFlore stated that Webster's response was that "if he had then he ought to be dead." Bennie later died from his wound.

¶5. When the police arrived, LeFlore pointed out Webster to the police. After Webster was given his Miranda rights and searched by the police, Webster informed them that he had been cut with the knife. The police then took him to the hospital for treatment. Webster was indicted for murder on December 10, 1996, and was subsequently convicted of murder. Webster appealed, and his case was assigned to the Court of Appeals, which affirmed his conviction. Webster then filed a Petition for Writ of Certiorari which we granted.

## ANALYSIS

### I.

### Was Webster's use of his peremptory challenges racially motived?

¶6. Webster first argues that the Court of Appeals' opinion is in conflict with ***Batson v. Kentucky*, 476 U.S. 79 (1986)**. Specifically he argues that he gave a race neutral reason for striking Morris Favi from the panel in that he was in a position of management at Cooper Rubber and Tire when his attorney, Cheryl Webster, successfully sued the company for discriminatory employment practices. He further argues he did not strike two other jurors, one of which was white and one of which was African American, who worked for the same company because they were labor, not management. Webster goes on to state that because Favi was allowed to serve on the jury, he was judged by a tainted juror and two people who worked for the tainted juror.

¶7. On this issue, the Court of Appeals found:

> In the case *sub judice*, Webster exercised his first five peremptory challenges on white jurors. Webster then attempted to strike Juror No. 2, and the State objected challenging the strike under *Batson* and its progeny. It is this Court's finding that determination of whether a prima facie case exists must focus on whether Webster was excluding all or almost all of the potential white jurors. Since that occurred here, an explanation was required. Webster then gave his explanation for striking Juror No. 2, and the court rejected it holding that it was not race-neutral. Webster attempted to further justify the strike, but the court refused to change its ruling.

> As stated above, trust is placed in a trial judge to determine whether or not a discriminatory motive drives the reasons given for striking a potential juror. The determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. *Id.*; *Batson*, 476 U.S. at 98. Thus, trial courts are given great deference in their findings of fact surrounding a *Batson* challenge. *Lockett*, 517 So. 2d at 1350. This deference specifically

includes a trial judge's determination of any racially discriminatory motive underlying any articulated reasons given. *Harper*, 635 So. 2d at 868. The following dialogue occurred between the parties when Webster attempted to strike Juror No. 2:

BY MR. ROSSI: Your Honor, the State would challenge under [*Batson*] and its progeny. The defense's strikes, they have levied a total of five strikes striking all white jurors with those five strikes and several of these jurors have not responded to any questions regarding any of the things that the Court or the attorneys asked in the open court, to differentiate them from any other jurors that are left on the panel.

BY THE COURT: All right. Ms. Webster, what is your reasons [sic] for striking D-1 which is Juror No. 2?

BY MS. WEBSTER: Oh, Morris Favi, is because I had sued Cooper Tire when he was plant manager for discrimination and that the party that I had sued him for, I believe, was Anna Webster.

BY THE COURT: Who is Anna Webster?

BY MS. WEBSTER: Anna Webster is J.W. Webster's sister-in-law and I won. And so I would strike Morris Favi because of that particular conflict.

. . . .

BY MR. ROSSI: First of all Mr. Favi was asked whether or not he knew Mr. Webster, the attorney, and he indicated he did not. The fact that he works at a company that has been sued by Ms. Webster, and I don't doubt that she has represented she has sued that company, that [she has] is not grounds to then strike Mr. Favi. I further point out that there are other Cooper Tire employees who are on the list, who are black, who have not been struck.

BY MS. WEBSTER: Well, he was the plant manager, I believe, at the time.

BY THE COURT: In view of the fact that there are other jurors similarly situated, Ms. Webster, who were not stricken and those other jurors being white and the first one that I see is Henry Larry, the Court reinstates Juror No. 2 who becomes our first juror.

BY MS. WEBSTER: Did you say Henry Larry was white?

BY MR. ROSSI: No, Henry Larry, I believe is black.

BY THE COURT: Is a black person who works at the same company who was not stricken.

BY MS. WEBSTER: Well, yes, but I have no idea that he was even working there at the time when the lawsuit took place.

BY THE COURT: Okay. Well, you may make exception to the Court's ruling but the Court has ruled. . . .

As stated in the aforementioned, Webster gave additional reasons to justify the strike after the judge's ruling stating that he had accepted a white juror who was an employee of the same company, and that

Juror No. 2 was in management with the company and the other jurors from the same company were not. However, the trial judge did not change his ruling. After careful review of the limited information contained in the record before us, it is this Court's finding that the trial judge's determination of this issue warrants our giving him "great deference" in his determination. Since his ruling was not clearly erroneous or against the overwhelming weight of the evidence, we find this issue to be meritless.

*Webster v. State*, No. 97-KA-00996-COA, 1999 WL 87081 at \*3-5 (Miss. Ct. App. Feb. 23, 1999).

¶8. Pursuant to ***Batson v. Kentucky***, 476 U.S. 79 (1986), the party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the strike. 476 U.S. at 96-97; ***Stewart v. State****,* 662 So. 2d 552, 557 (Miss. 1995). The burden then shifts to the party exercising the challenge to offer a race-neutral explanation for striking the potential juror. ***Batson****,* 476 U.S. at 97-98; ***Stewart****,* 662 So. 2d at 558. Finally, the trial court must determine whether the objecting party has met its burden by showing that there has been purposeful discrimination. ***Batson,*** 476 U.S. at 98; ***Stewart****,* 662 So. 2d at 558.

¶9. In this case, the State argued that Webster had used his first five peremptory strikes against white jurors, thereby giving rise to a reasonable inference of purposeful discrimination. See ***Batson***, 476 U.S. at 97 (stating that "pattern" of strikes may suffice for prima facie showing). Webster attempted to offer race-neutral reasons for his actions, claiming that Favi had worked at Cooper Rubber and Tire when Webster's attorney had successfully sued the company for discriminatory employment practices. The State responded that Webster had left two other employees of Cooper Tire and Rubber on the jury. The trial court found the strike to be racially motivated.

¶10. Great deference is accorded to the trial court in determining whether the offered explanation under the unique circumstances each case presents is truly a race-neutral reason. ***Stewart*** at 558. The Court will not reverse a trial judge's factual findings regarding a ***Batson*** issue "unless they appear clearly erroneous or against the overwhelming weight of the evidence." ***Stewart*** at *558* (quoting ***Lockett v. State***, 517 So.2d 1346, 1350 (Miss. 1987)). "The demeanor of the attorney using the strike is often the best evidence on the issue of race-neutrality." ***Stewart***, 662 So.2d at 559 (citing ***Hernandez v. New York***, 500 U.S. 352, 365 (1991)). "The credibility of the one making the challenge is often decisive." ***Id.*** In addition to the demeanor of the attorney, the trial court must consider all other relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions on voir dire. ***Stewart***, 662 So.2d at 559.

¶11. However, this Court has also said:

A peremptory challenge does not have to be supported by the same degree of justification required for a challenge for cause. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; *Harper v. State*, 635 So.2d 864, 867 (Miss.1994); *Benson v. State*, 551 So.2d 188, 192 (Miss.1989).

*Stewart* at 558. In this case, Webster offered a sufficient race neutral reason for striking the juror, i.e. he was a member of management at Cooper Rubber and Tire when his attorney successfully sued the company for discriminatory employment practices on behalf of Webster's sister-in-law. Therefore appears that the trial court's decision was clearly erroneous and against the overwhelming weight of the evidence, and we reverse and remand on this issue for a new trial.

## II.

### Did the trial court err by failing to give Webster's jury instruction on accident

¶12. Webster next argues that the Court of Appeals erred in finding no error in the trial court's refusal to give his jury instruction D-2,[1] which was an accident instruction. Webster argues that there was an evidentiary basis for such an instruction to be given, and therefore the trial court erred in refusing to give it. However, Webster fails to point out where such evidence is contained in the record, nor does he cite any authority in support of his position.

¶13. On this issue, the Court of Appeals found:

In the case at bar, no facts or evidence appeared in the testimony that the killing occurred both by self-defense and by accident. Webster testified that since Rosebur was outside with a knife, he grabbed a butter knife when he attempted to leave, and that the two of them began to chase each other around. Webster stated that realizing that the butter knife would not protect him, he grabbed a stick that was on the ground. Webster stated that as they were fighting each other, the next thing he saw was blood coming from Rosebur's chest. Webster testified that Rosebur stabbed himself during the altercation; however, testimony from Curtis and the state pathologist contradicted Webster's account of what actually took place. Curtis testified that as he was standing in the doorway, Webster walked past him with a butcher knife behind his back, approached Rosebur from behind, and stabbed him in the neck. Dr. Stephen Hayne, the medical examiner, testified that Rosebur's fatal stab wound would have been consistent with being stabbed from behind if the assailant was right-handed. Dr. Hayne stated:

[T]he stab wound to the decedent traveled slightly to the left and normally stab wounds, if they're being inflicted from the front by a right-handed person, usually travels slightly to the left at approximately 10 degrees as well as going downward at approximately 60 degrees. So it would be consistent with a stab wound from behind.

Moreover, on cross-examination, Dr. Hayne testified that he did not believe that Rosebur could have stabbed himself. His testimony, in pertinent part, reads as follows:

Q: And could the fatal wound- I'll ask a hypothesis. If Bennie Rosebur had a knife in this hand and it was hit with such great force, could it have been forced into him at such great force that the wound would have been caused by the knife in this hand?

A: The only way I could conceive of that occurring, if someone took his hand and then drove his hand into his chest.

Q: All right. Could they have hit it with such great force with say a stick to have hit it to go in?

A: I do not believe so, no.

Q: You don't think that it's possible to hit someone with such force that you could drive it into them like a stake?

A: It is possible to strike a person with enough force to drive a hand-holding knife into the body.

However, in this case, I would expect to see the external injuries on the right upper extremity, the right hand, the fingers of the right hand, the forearm of the right upper extremity or the right arm indicating that that type or force had been applied to the extremity allowing for the stab wound of the chest as you describe, and I did not see that.

Therefore, it is this Court's finding that there was no evidentiary basis capable of supporting a factual finding that Webster had accidentally stabbed Rosebur under such circumstances, and the requested jury instruction was properly denied.

*Webster v. State*, No. 97-KA-00996-COA, 1999 WL 87081 at *9 (Miss. Ct. App. Feb. 23, 1999). After a thorough review of the record, we find that there was not a sufficient evidentiary basis to support giving an accident instruction, and therefore, the Court of Appeals correctly decided this issue. We affirm on this issue.

### III.

### Was the failure to give a *sua sponte* limiting instruction reversible error?

¶14. Finally, Webster argues that the Court of Appeals erred in affirming his conviction in that the trial court admitted evidence of a prior bad act without making an on-the-record determination that the probative value outweighed the prejudicial effect of the evidence. Specifically, he argues that the trial court should not have allowed testimony regarding a fight that took place approximately one year earlier between him and the victim because it was too prejudicial. In addition, he argues that the trial court did not *sua sponte* give the required limiting instruction, and therefore the Court of Appeals' opinion is in conflict with *Eubanks v. State*, 419 So. 2d 1330 (Miss. 1982).

¶15. In *Eubanks*, *supra*, Jeffrey Glenn Eubanks was convicted of simple assault upon a conservation officer after he was arrested pursuant to an arrest warrant stemming from an incident a couple of weeks earlier. *Eubanks* at 1330-31. Over the objection of Eubanks, the State was allowed to present evidence concerning the prior incident which resulted in the issuance of the arrest warrant. *Id.* at 1331. We found the admission of the evidence to be reversible error, and in so doing we stated:

We reverse and remand this case for the reasons enumerated in *Spears v. State*, 253 Miss. 108, 175 So.2d 158, 167 (1965), wherein we quoted from *Scarbrough v. State*, 204 Miss. 487, 37 So.2d 748 (1948), stating:

"This is not one of those cases for the application of the rule that a conviction will be affirmed unless it appears that another jury could reasonably reach a different verdict upon a proper trial than that returned on the former one, but rather it is a case where the constitutional right of an accused to a fair and impartial trial has been violated. When that is done, the defendant is entitled to another trial regardless of the fact that the evidence on the first trial may have shown him to be guilty beyond every reasonable doubt. The law guarantees this to one accused of crime, and until he has had a fair and impartial trial within the meaning of the Constitution and Laws of the State, he is not to be deprived of his liberty by a sentence in the state penitentiary." 204 Miss. at 497, 37 So.2d at 750.

Excluding the prejudicial testimony complained of we are aware there was ample evidence to convict Eubanks for simple assault. However, the State, by continuously placing before the jury throughout the trial evidence designed to show Eubanks guilty of other and former misconduct, constituted

prejudicial error. The combination of all this prejudicial testimony being introduced before the jury in a prosecution for simple assault, in our opinion, precluded the possibility of a fair trial upon the charge in the indictment. *Sumrall v. State*, 272 So.2d 917 (Miss.1973).

*Eubanks* at 1332.

¶16. On this issue in the present case, as will be shown *infra*, the Court of Appeals properly found:

It is this Court's finding that the trial court properly admitted the testimony under Rule 404 (b) because it indicated both a possible motive and showed intent. Furthermore, the trial court did make an adequate on-the-record finding regarding relevancy under Rule 403. Lastly, Webster is correct; no limiting instruction was sought or given by the court *sua sponte*. "Although *Smith* held it reversible error for the court not to give a limiting instruction *sua sponte*, neither *Smith* or any other case on point that had this type of error held that this oversight is not subject to a harmless error analysis." *Moss v. State*, 97-KA-00331-COA (¶23)(Miss. Ct. App. 1998). In *Givens v. State*, 96-KA-00650-COA (¶33)(Miss. Ct. App. 1998), this Court cited *Forrest v. State*, 335 So. 2d 900, 903 (Miss. 1976), where the supreme court stated, "An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." (citations omitted).

*Webster v. State*, No. 97-KA-00996-COA, 1999 WL 87081 at *7 (Miss. Ct. App. Feb. 23, 1999). After reciting the evidence against Webster, the Court of Appeals found that the failure of the trial court to *sua sponte* give a limiting instruction regarding Webster's prior bad acts was harmless error in light of the overwhelming evidence against him. *Id.* The Court of Appeals went on to add:

However, we find it necessary to repeat what Judge Coleman stated in *Givens*, "Lower courts and prosecuting attorneys must not commit errors on the speculation that the Supreme Court [or the Court of Appeals] will affirm on the ground of harmless error." (*Givens*, 96-KA-00650-COA at ¶11) (quoting *Townsend v. State*, 605 So. 2d 767, 771 (Miss. 1992)). This issue is without merit.

*Webster* at *8.

¶17. In *Smith v. State*, 656 So. 2d 95 (Miss. 1995), Smith was indicted for possession of crack with the intent to distribute. The State, allegedly for the purpose of proving intent to distribute, introduced evidence of Smith's prior sales of cocaine. There we stated:

In this crack cocaine case we are compelled to consider the proper handling and import of evidence of prior sales admitted for the purpose of showing intent to distribute. We conclude that such evidence is admissible for the purpose described if the trial court concludes that, under the circumstances, its probative value outweighs its prejudicial effect. A limiting instruction should and, if sought, must be given. We also conclude that such evidence, without more on the issue of intent, is insufficient to support a conviction for the offense of possession with intent. We, therefore, reverse and remand for sentencing on the offense of possession of cocaine.

*Id.* at 97.

¶18. In our analysis of the admissibility of Smith's prior cocaine sales, we found that the trial court properly admitted the evidence of Smith's prior crack sales under the Rule 404(b) exception for acts offered to

prove "intent," and the trial court properly conducted a balancing analysis under Rule 403. We did, however, find that the trial court committed error by failing to give a limiting instruction:

> We hold that evidence of prior acts offered to show intent to distribute is not barred by M.R.E. 404 and is properly admissible if it passes muster under M.R.E. 403 and is accompanied by a proper limiting instruction.
>
> . . . . . . . . . . . . . . .
>
> The defense did not request, and the jury was not given, an instruction as to the limited purposes for which the other-crimes evidence could be considered. On appeal, Smith argues that it was error for the lower court not to grant a cautionary instruction, *sua sponte*.

*Id.* at 99.

¶19. We went on to say:

> Nevertheless, we must be mindful of our rules. We have promulgated M.R.E. 105 which clearly contemplates that restrictive instructions be given upon request and as the Comment acknowledges, that in the absence of a request, there is no error. ... We are loath to reverse for plain error in the face of a rule so clear. We say for the future, however, that wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction. The court shall conduct an MRE [403] analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.

*Id.* at 100. The foregoing clearly establishes that if an accused objects to Rule 404(b) evidence and the trial court, after conducting a Rule 403 analysis, finds that the probative value of the evidence outweighs the prejudicial effect, the trial court must treat the objection to the admissibility of Rule 404(b) evidence as a request for a limiting instruction.

¶20. The question remains, however, as to whether such an error is subject to harmless error analysis as was found by the Court of Appeals. *Puckett v. State*, 737 So.2d 322 (Miss. 1999), is helpful. In that case the prosecution put on evidence that Puckett had been fired by his previous employer. *Puckett* at 351. We found that the evidence was admissible pursuant to M.R.E. 404(a) because Puckett had opened the door to character evidence, and in so doing stated:

> Puckett further alleges that he "is entitled to reversal" because of the failure of the Court to follow the requirements set forth by this Court in *Bounds v. State*, 688 So.2d 1362, 1373 (Miss.1997). In *Bounds*, this Court cited *Smith v. State*, 656 So.2d 95 (Miss.1995), for the proposition that "in the future whenever 404(b) evidence is offered, and there is an objection which is overruled, the objection shall be deemed an invocation of the right to a MRE 403 analysis and a limiting instruction." *Bounds*, 688 So.2d at 1372 (citing *Smith*, 656 So.2d at 100). Puckett's argument would be correct had the testimony been admitted under Rule 404(b). However, since we find the testimony admissible under Rule 404(a), **the trial court's failure to issue a limiting instruction *sua sponte* is harmless error.**

*Puckett* at 352 (emphasis added).

¶21. In addition, we have previously held harmless error analysis applies to questions of the admissibility of evidence pursuant to M.R.E. 404(b). See *Baldwin v. State*, 732 So. 2d 236 (Miss. 1999) (holding allowing confidential informant to testify as to other alleged drug sales by the defendant harmless error); *Carter v. State*, 722 So. 2d 1258 (Miss. 1998) (holding evidence of defendant engaging in a previous "shoot-out" harmless error in a trial for murder).

¶22. In light of the fact that we found the error in *Puckett*, *supra*, to be harmless, and we have previously applied harmless error analysis to the question of admissibility of M.R.E. 404(b) evidence, we hold that harmless error analysis is applicable in cases where the trial court does not *sua sponte* give the required limiting instruction when M.R.E. 404(b) evidence is admitted. In the present case the evidence of Webster's guilt, as recited by the Court of Appeals in its opinion, was overwhelming, and therefore we affirm on this issue.

## CONCLUSION

¶23. The trial court erred in finding that Webster exercised his peremptory challenges in a racially motivated manner, and therefore, we reverse and remand for a new trial consistent with this opinion. We further hold that the Court of Appeals was correct in finding that the trial court's failure to *sua sponte* give a limiting instruction was harmless error and that there was not a sufficient evidentiary basis for the trial court to give an accident instruction. Therefore we affirm on these two issues.

¶24. **REVERSED AND REMANDED.**

**PRATHER, C. J., SULLIVAN, P.J., BANKS AND WALLER , JJ., CONCUR. McRAE AND COBB, JJ., CONCUR IN RESULT ONLY. SMITH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. COBB, J., JOINS IN PART.**

**SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶25. I agree with the majority on all issues except the majority's determination that the trial court erroneously found that J.W. Webster used his peremptory strikes in a racially motivated manner and because of such error Webster is entitled to a new trial.

¶26. The record reflects that Webster's counsel had used five strikes, all five against white jurors. Whereupon, the State challenged the defense to cite reasons for its strikes in accordance with *Batson v. Kentucky*, 476 U.S. 79 (1986), and the trial court held that a prima facie case existed and agreed that an explanation was necessary requiring Webster to state on the record his reasons for striking the jurors.

¶27. The majority's decision to reverse for a new trial hinges upon the trial judge's ruling regarding a single juror, Juror No. 2, Morris Favi, who was an employee of Cooper Tire as plant manager when supposedly Webster's counsel had previously successfully sued Cooper Tire. Webster's counsel had accepted at least two other jurors who were black and were also employees of Cooper Tire, thus similarly situated. Accordingly, the trial court rejected counsel's explanation and ruled that the reason for striking this juror

was not race-neutral.

¶28. This Court has held that "Race-neutral explanations satisfy **Batson**, but only when they are not a smokescreen behind which the state is, in reality, exercising discriminatory challenges." **Griffin v. State**, 607 So. 2d 1197, 1203 (Miss. 1992). The determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. **Batson**, 476 U.S. at 98. Here, the trial judge was in the best position to observe the demeanor of the attorney for Webster who was citing the reasons for Webster's strikes of the first five peremptory challenges used on white jurors. The trial judge found a pattern was clearly present. The trial judge should rightfully be granted deference in deciding a **Batson** challenge because the trial judge is in the best position to observe the attorney's demeanor which is often the best evidence regarding the issue of race neutrality. *Hernandez v. New York*, 500 U.S. 352, 365 (1991). It is obvious here that the trial judge's evaluation of Webster's counsel's credibility and demeanor was sufficient for the learned judge to question counsel's discriminatory intent in striking the first five white jurors. Apparently, the trial judge concluded that the actions of counsel were but a "smoke screen . . . excercis[ed] to mask a discriminatory challenge." **Griffin,** 607 So. 2d at 1203. Giving deference to the trial court's finding of fact surrounding this **Batson** challenge, we should affirm the trial court as did the Court of Appeals. *See **Lockett v. State***, 517 So. 2d 1346, 1350 (Miss. 1987).

¶29. For these reasons, I respectfully dissent.

## MILLS, J., JOINS THIS OPINION. COBB, J., JOINS IN PART.

1. Instruction D-2 reads as follows:

> The killing of a human being is an excusable homicide if the defendant's act which caused the death of Bennie Rosebur was a result of an accident and misfortune in doing a lawful act by lawful means with usual and ordinary caution and without unlawful intent. If Bennie Rosebur's death was caused by the stabbing of the knife accidentally when it was hit by the defendant's stick during the incident and that the defendant used usual and ordinary caution and had no unlawful intent, then the homicide is excusable.

> If you do find that the stabbing was accidental and thus excusable, then you shall find for the defendant and return a verdict of not guilty.