812 So.2d 235 (2001)
W.C. BELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00779-COA.
Court of Appeals of Mississippi.
October 9, 2001.
Rehearing Denied December 4, 2001.
Certiorari Denied March 28, 2002.
*237 Anthony L. Farese, David L. Robinson, Ashland, Attorneys for Appellant.
Office of the Attorney General by John R. Henry, Jr., Attorney for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the court:
¶ 1. W.C. Bell was convicted of a driveby shooting under Miss.Code Ann. § 97-3-109 (Rev.2000) and was sentenced to five years incarceration with five more years of supervised probation. He appeals asserting that the circuit court erred by: (1) refusing to allow him to call an exculpatory witness, Tyrone Johnson, (2) refusing to allow him to introduce the written statement of that witness, (3) denying his requested peremptory instruction and motion for a judgment notwithstanding the verdict or in the alternative a new trial, (4) refusing to grant a mistrial following improper cross-examination, and (5) denying his requested motion in limine and allowing the State to elicit testimony of prior bad acts. Finding no error, we affirm.

FACTS
¶ 2. W.C. Bell and his wife, Donecie Bell, were estranged, and she was romantically involved with Larry Johnson. On November 25, 1999, W.C. Bell drove to Larry Johnson's mobile home, and an argument ensued during which he broke windows out of Donecie's car and Larry Johnson fired a pistol causing W.C. Bell to flee.
¶ 3. W.C. Bell returned in a Ford Explorer with three other individuals. Ulysses Walker drove, and W.C. Bell sat in the front passenger seat. Tyrone Johnson, who had no familial relation to Larry Johnson, sat in the backseat behind the driver, and Percy Gillespie sat behind W.C. Bell. Shots were fired from this vehicle into Larry Johnson's home.
¶ 4. The vehicle was stopped by Oktibbeha County sheriff personnel, and the four men were arrested. An unloaded nine millimeter pistol was recovered from under W.C. Bell's seat, and a fully loaded pistol clip was retrieved from his person. A .380 pistol was recovered from Gillespie, and at least two rounds less than its capacity were in the pistol. No bullets were retrieved from Larry Johnson's home to determine from which pistol they were fired, nor were any tests conducted to determine which pistols had been fired or whether any of the men had gunpowder residue on their persons.
*238 ¶ 5. Gillespie testified for the State, and at the time of the trial he was under indictment for charges stemming from the shooting. He testified that W.C. Bell asked him to help him go get Bell's wife's automobile and his son and that he gave Gillespie the pistol. Gillespie admitted that he fired "three or four" shots from the pistol towards Larry Johnson's home. However, he stated that since he was intoxicated he did not know if W.C. Bell had fired a pistol or what anyone else in the vehicle had done. Gillespie stated the reason he shot the pistol was that he was "scared," and he denied that W.C. Bell coerced him into shooting.
¶ 6. Larry Johnson testified that he was standing approximately 200 yards from his home when the vehicle carrying the four men arrived. As the vehicle drove by, Johnson saw W.C. Bell in the front passenger seat. By the time the shots were fired, the vehicle was some 200 yards away from Johnson; nonetheless, he positively testified that W.C. Bell shot a pistol. He was the only person who testified that W.C. Bell fired a pistol.

DISCUSSION

I. REFUSAL TO ALLOW W.C. BELL TO CALL TYRONE JOHNSON AS A WITNESS
¶ 7. W.C. Bell sought to call Tyrone Johnson as a witness. Bell and the State jointly stipulated to the circuit court that Tyrone Johnson would refuse to answer any questions going to any facts concerning the shooting because he was still under threat of indictment. The circuit court concluded that Tyrone Johnson was "unavailable as a witness."
¶ 8. As a matter of law, this ruling was incorrect. Tyrone Johnson was unavailable in the sense that W.C. Bell could not compel him to responsively answer questions, but W.C. Bell did have the right to compel Tyrone Johnson's attendance and allow the jury to view him exercise his Fifth Amendment rights. In Stewart v. State, 355 So.2d 94, 96 (Miss.1978), our supreme court established that a defendant has a right of compulsory process to compel a witness to take the stand even though the witness will invoke his Fifth Amendment rights not to answer questions. See also Wright v. State, 730 So.2d 1106, 1109 (Miss.1998).
¶ 9. However, we find that no prejudice occurred to W.C. Bell's defense. W.C. Bell stated that the reason he sought to call Tyrone Johnson was to attempt to have him recite the same facts he gave in a statement which exculpated W.C. Bell. In this statement, Tyrone Johnson said that W.C. Bell did not shoot a pistol, and said that there was no common plan or scheme to shoot into Larry Johnson's house. W.C. Bell's purpose in calling Tyrone Johnson was to buttress his testimony, as well as Gillespie's testimony. However, it is uncontroverted that Tyrone Johnson would have invoked his Fifth Amendment rights concerning self-incrimination and would refuse to answer any questions posed to him. We fail to find that W.C. Bell's defense would have been bolstered merely because the jury was allowed to view his own exculpatory witness being unresponsive.
¶ 10. For reversible error to occur, an error in improperly excluding evidence must prejudice a defendant in how a case is presented to the jury. Pham v. State, 716 So.2d 1100, 1102(¶ 12) (Miss. 1998). See also Williams v. State, 761 So.2d 149, 154(¶ 18) (Miss.2000)(harmless error may be found where the error concerning the admission of evidence could not have influenced the jury's verdict). In this case, allowing the jury to view Tyrone Johnson avoiding questions concerning *239 W.C. Bell's innocence would not have tended to make the jury members believe W.C. Bell was in fact innocent. Therefore, we find that any error the trial court may have committed was harmless since no prejudice occurred to Bell.

II. REFUSAL TO ADMIT TYRONE JOHNSON'S WRITTEN STATEMENT
¶ 11. Following the circuit court's ruling on Tyrone Johnson's unavailability, W.C. Bell sought to introduce Tyrone Johnson's written statement into evidence as an exception to hearsay under either M.R.E. 804(b)(3), which describes a statement against interest, or M.R.E. 804(b)(5), which explains "other exceptions" to the rule against hearsay. The circuit court found that Tyrone Johnson's statement was not against his interest because it actually exculpated him from the crime, and was inadmissible under M.R.E. 804(b)(3). The circuit court further found that the statement did not have "circumstantial guarantees of trustworthiness," rendering it inadmissible under M.R.E. 804(b)(5).
¶ 12. The decision to admit evidence rests with the discretion of the trial court. Baine v. State, 606 So.2d 1076, 1078 (Miss.1992)(citing Wade v. State, 583 So.2d 965, 967 (Miss.1991)). In giving the statement, Tyrone Johnson had strong motivation to represent that no agreed plan existed to shoot at Larry Johnson's homehe not only was under the assumption that he could be charged in the driveby shooting, but also, if convicted, he faced enhanced sentencing since he already had two prior felony convictions. Furthermore, the statement was cumulative in that the facts it contained were put before the jury by other witnesses. On these facts, the circuit court did not abuse its discretion.

III. DENIAL OF A PEREMPTORY INSTRUCTION
¶ 13. W.C. Bell contends that the circuit court erred in denying his requested peremptory instruction and in failing to grant a judgment notwithstanding the verdict. He contends that the evidence could not support a finding either that he fired a pistol or that he counseled others to do so.
When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom.
Jones v. State, 783 So.2d 771, 775 (¶ 11) (Miss.Ct.App.2001)(citing Yates v. State, 685 So.2d 715, 718 (Miss.1996)). In this case, Larry Johnson testified that he saw W.C. Bell fire a pistol. As such, the matter of the witnesses's credibility was properly put to the jury, and the circuit court did not err in denying the motion.
¶ 14. W.C. Bell additionally requested the circuit court grant a new trial based upon weight of the evidence. "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Herring v. State, 691 So.2d 948, 957 (Miss.1997). In this case, W.C. Bell's own testimony showed that he armed himself and another man and returned to a location where he had had a violent argument. On this evidence, there is no abuse of discretion, and the circuit court did not err in refusing to grant a new trial.

IV. CROSS-EXAMINATION OF DONECIE BELL
*240 ¶ 15. W.C. Bell contends that the circuit court erred in denying his motion for a mistrial based upon improper cross-examination of Donecie Bell. Donecie Bell testified that Larry Johnson contradicted his testimony in a prior conversation with her in which he admitted he did not actually see W.C. Bell fire a pistol. The State, in turn, sought to impeach Donecie Bell's testimony by asking whether she had made a prior inconsistent statement to Larry Johnson in which she said that W.C. Bell had admitted his guilt. Donecie Bell denied making this statement. The State thereafter failed to follow-up on this attempted impeachment by calling Larry Johnson to testify as to the conversation.
¶ 16. In this case, W.C. Bell asserts that there was no actual statement by Donecie Bell underlying the State's questioning, and the State attempted the impeachment merely as a ruse to cast doubt upon her testimony that Larry Johnson had not been truthful when identifying W.C. Bell. The record does not support W.C. Bell's assertion. First, W.C. Bell failed to make a contemporaneous objection to the testimony. A defendant must make an objection when there is an allegation that the State is fabricating a prior inconsistent statement so that the State may present its rationale to the trial court and for the record. Flowers v. State, 773 So.2d 309, 326(¶ 56) (Miss.2000); Hosford v. State, 525 So.2d 789, 792 (Miss. 1988). Thus, even if there was error, W.C. Bell failed to preserve it. Moreover, it is clear that Donecie Bell understood what conversation with Larry Johnson the State was referring to when it laid its predicate. She simply denied that she made the exact statement. She testified that what she really meant was that the animosity between Larry Johnson and W.C. Bell had gone far enough, and the entire matter should be dropped. That is, Donecie Bell was asked to explain the conversation, and she did so, and the State took no further issue with her. The record indicates that the State did not fabricate any statement. As such, W.C. Bell's motion for a mistrial was properly denied.

V. DENIAL OF A MOTION IN LIMINE

¶ 17. W.C. Bell contends that the trial court should have granted his motion in limine by which he sought to exclude testimony about the altercation that occurred on the morning of the day of the drive-by shooting. Specifically, he sought to exclude the facts that he broke the window of his wife's automobile and that he was chased away at gunpoint. When a defendant brings a motion in limine, a trial court must conduct a balancing test, pursuant to M.R.E. 404(b), to weigh the possible prejudice against the probative value. Webster v. State, 754 So.2d 1232, 1240 (¶¶ 19-20) (Miss.2000). The analysis is given discretionary review by an appellate court. Edlin v. State, 533 So.2d 403, 407 (Miss.1988). Further, if a trial court finds that the probative value outweighs the possible prejudice, and admits the evidence, the trial court must treat the motion as a request for a limiting instruction even if no such request is explicitly made by the defendant. Webster, 754 So.2d at 1240 (¶¶ 19-20).
¶ 18. In this case, the circuit court correctly conducted the balancing test. The jury was required to hear W.C. Bell's testimony that he was justified in arming himself and Gillespie prior to returning to Larry Johnson's home. Thus, we find that the probative value outweighed any possible prejudice that might arise from the jury knowing that W.C. Bell was angry and had been shot. Consequently, the circuit court did not err in denying the motion in limine. However, the circuit court did not sua sponte issue a *241 limiting instruction that the fact that W.C. Bell had acted violently earlier on the day of the drive-by shooting should not indicate his guilt. This omission was in error. However, such error is subject to a harmless error analysis. See Webster, 754 So.2d at 1240(¶ 20). In this case, W.C. Bell himself testified as to his actions during his first trip to Larry Johnson's home. Gillespie also testified to these same facts. Both men were extensively examined and cross-examined as to whether they were acting with any motive arising from anger or revenge. They consistently denied having such motive. Given these facts, the failure of the circuit court to issue a limiting instruction sua sponte early in the trial, before either W.C. Bell or Gillespie testified, during the State's case in chief was harmless. This assertion of error is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF SHOOTING INTO AN OCCUPIED DWELLING AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.