BRIDGES, J.,
for the Court.
¶ 1. Tracy Harris was indicted on March 30, 1999, by the grand jury of the Circuit Court of the Second Judicial District of Bolivar County, Mississippi. The indictment charged him with the murder of Frederick Haywood in violation of Mississippi Code Annotated section 97-3-17 (Rev.2000). On April 6, 1999, Harris was arraigned and entered a plea of not guilty.
¶ 2. On June 10-11, 1999, Harris was tried before a jury and was found guilty of murder and received a life sentence in the custody of the Mississippi Department of Corrections. It is from this conviction and sentence that Harris now appeals to this Court.
STATEMENT OF THE ISSUES
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-2 AS REQUESTED BY HARRIS?
II. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTION TO USE THREE OF ITS PEREMPTORY CHALLENGES IN A RACIALLY DISCRIMINATORY MANNER?
III. DID THE TRIAL COURT’S FAILURE TO GIVE A SUA SPONTE CAUTIONARY INSTRUCTION CONSTITUTE REVERSIBLE ERROR?
FACTS
¶ 3. On the night of March 27, 1998, Frederick Haywood, Anthony O’Bryant, and Algesa Haywood arrived at the American Legion Hut (“the Hut”) in Mound Bayou, Mississippi. Already at the Hut were Joe Smith, Nakil O’Bryant, Willie Morgan, and the Appellant, Tracy Harris.
¶ 4. Larry Haywood, also known as “Slug”, walked into the Hut. Moments later when he exited, he was immediately hit in the head with a gun by Joe Smith. Frederick Haywood walked to a Ford Explorer to get a bat. It was then that Nakil O’Bryant and Willie Morgan began shooting at the Ford Explorer. According to testimony, Harris reached over the shoulder of Nakil to retrieve the gun while *92 stating, “You ain’t shooting this M.F. right” and began shooting until Frederick Haywood fell to the ground. Harris then ran across the street and jumped in a ditch.
¶ 5. Several of the witnesses from the night in question agreed to testify at trial. Anthony O’Bryant testified that he was at the American Legion Hut on the night of the shooting and that he remembered hearing Harris say to Morgan that he was not firing the handgun properly. Anthony O’Bryant also testified to seeing Harris take the gun from Morgan, who was shooting into the air at the time, level it and begin shooting at Frederick Haywood.
¶ 6. Algesa Haywood also testified at trial and identified Harris as the person who shot Frederick Haywood. Algesa also stated that Harris took the gun from Morgan, and then “aimed at him and Fred fell.” Algesa also corroborated the testimony of Anthony O’Bryant in hearing Harris say to Morgan, “You ain’t shooting it right.”
¶ 7. Ronald Robinson, chief of police in Mound Bayou, testified to finding Frederick Haywood with a bullet wound in his chest. Robinson also found a handgun in a ditch nearby and four cartridge shells were found at the scene of the shooting. At the autopsy, a bullet was recovered from the body of Frederick Haywood, which was labeled, packaged and sent to the crime laboratory for testing. Dr. Steven Hayne, who performed the autopsy on Frederick Haywood, testified that Haywood died from a gunshot wound to his upper chest and a .45 caliber bullet was removed from his body.
¶ 8. Steve Byrd from the Mississippi State Crime Laboratory testified that the bullet was fired from the .45 caliber semiautomatic handgun that was found near the scene of the shooting. Nakil O’Bryant later testified and identified the handgun as belonging to him and that the same gun was the one taken out of his truck by Morgan while at the American Legion Hut.
¶ 9. Harris decided to testify in his own behalf and began by saying that he did take the handgun but he denied having argued with the victim or having shot at him or anyone else. He also denied having told anyone that he shot Haywood. (He originally told investigators that he took the handgun from Morgan.)
¶ 10. After he was found guilty, Harris filed a motion for a JNOV. Harris’s motion was denied by the trial court.
ANALYSIS
I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT INSTRUCTION D-2 AS REQUESTED BY HARRIS?
¶ 11. During jury instruction selection, the defense requested jury instruction D-2, which was later rejected by the trial court. Harris felt he was entitled to an instruction that included the phrase, “in the heat of passion.” Consequently, the trial court found that there was a lack of evidence that Harris had acted in the heat of passion without malice aforethought. The trial court, however, did grant an alternative instruction which covered manslaughter. In this lesser-included-offense instruction for manslaughter, the phrase used was “the killing of a human being without malice, by use of a dangerous weapon, without authority of law is manslaughter.”
¶ 12. “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” John *93 son v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002).
¶ 13. In Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990), the court held that a defendant was not entitled to an instruction which incorrectly stated the law, was without foundation in the evidence or was stated elsewhere in another instruction.
A defendant is entitled to have an instruction on his theory of the case. There is a limitation, however, because a trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instruction.
Id. (citations omitted).
¶ 14. The trial court did not err in denying jury instruction D-2 since instruction C-30 sufficiently covered a lesser-in-eluded-offense instruction for manslaughter. The evidence from the record shows that there was no claim of acting in the heat of passion by Harris or his own witnesses. Harris’s own testimony was that he had no confrontation with the victim, and he did not shoot at anyone. Harris had possession of the handgun used in the shooting only after someone else had allegedly fired it at the victim. However, the record reflects an abundance of corroborated eyewitness testimony that Harris deliberately and intentionally used a dangerous weapon, a handgun, to shoot and kill the victim. When reading the instructions actually given as a whole, this Court finds that the “instructions fairly announce the law of the case and create no injustice.” Therefore, the Court finds this issue is without merit.
II. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTION TO USE THREE OF ITS PEREMPTORY CHALLENGES IN A RACIALLY DISCRIMINATORY MANNER?
¶ 15. “On review, the trial court’s determinations under Batson are afforded great deference because they are, in large part, based on credibility.” McGilberry v. State, 741 So.2d 894, 923 (¶ 118) (Miss.1999) (citing Coleman v. State, 697 So.2d 777, 785 (Miss.1997)). “This Court will not reverse any factual findings relating to a Batson challenge unless they are clearly erroneous.” Id.
¶ 16. The State exercised peremptory challenges against four black veniremen. Harris alleges that the State made its strikes on the basis of race. The State argued that the three jurors that were stricken were teachers, and further stressed that teachers as a whole are more sympathetic to a defendant’s cause and to wrongs committed by others. The State concluded by relating a situation where teachers were on a jury a few weeks earlier that sent a note inquiring whether the jury could recommend counseling for a young man who was on trial for shooting someone. The trial court examined the reasons given by the State and made on-the-record factual inquiry and determinations, and found the reasons for the strikes to be sufficient to meet the Batson challenges.
¶ 17. The Mississippi Supreme Court has also accepted demeanor as a legitimate, race-neutral basis for a peremptory challenge. Walker v. State, 671 So.2d 581, 628 (Miss.1995); see also Davis v. State, 660 So.2d 1228, 1242 (Miss.1995).
¶ 18. This Court finds it inappropriate to strike jurors just because they are a member of a particular class; however, it is noteworthy that the record reflects that the State had accepted five black jurors prior to striking four black jurors, three of whom were teachers.
¶ 19. We will not reverse a trial judge’s factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence. *94 Walters v. State, 720 So.2d 856, 865(¶28) (Miss.1998). According to the record, the trial court’s findings on Harris’s challenges are not clearly erroneous nor against the weight of the evidence. This issue is without merit.
III. DID THE TRIAL COURT’S FAILURE TO GIVE A SUA SPONTE CAUTIONARY INSTRUCTION CONSTITUTE REVERSIBLE ERROR?
¶ 20. During cross examination, Linda Anderson, a defense witness, was questioned regarding statements she allegedly made to Joseph Smith. Anderson denied having talked to Joseph Smith, or having made any statement. Defense counsel objected to the line of questions unless it could be proven. The prosecution stated for the record that it would call Joseph Smith to substantiate that Anderson had made a statement. The defense neither made a motion to strike nor requested a cautionary instruction.
¶ 21. When Joseph Smith testified he stated that Anderson told him that “folks got me in here trying to say something that I didn’t say.” The defense then cross examined Smith regarding the statements allegedly made by Anderson and Smith was neither impeached nor shown to be lacking in credibility as to what Anderson allegedly said to him.
¶ 22. The prosecution told the jury, during closing argument, that it believed the statements Anderson allegedly made to Smith were, in the prosecution’s interpretation. of the testimony, an indication that Anderson was not telling the truth, and that the jury should consider this in their evaluation of the credibility of witnesses.
¶ 23. The Mississippi Supreme Court has noted that “the better practice is that a limiting instruction be granted by the trial judge sua sponte when proper request is not made by defense counsel.” Peterson v. State, 518 So.2d 632, 638 (Miss.1987). While giving a limiting instruction sua sponte may be the “better practice” when a request by defense counsel has not been made, failure to give a limiting instruction sua sponte is not always reversible error. Williams v. State, 819 So.2d 532, 540-41 (¶¶ 24-28) (Miss.Ct.App.2001).
¶ 24. Relying solely on Webster v. State, 754 So.2d 1232 (Miss.2000), Harris asserts that the court erred in failing to give a cautionary instruction. In Webster, the Mississippi Supreme Court held that whenever Rule 404(b) evidence of another crime is offered, a cautionary instruction must be given to the jury. Id. at 1240(¶ 19). However, we find that Webster also held “that harmless error analysis is applicable in cases where the trial court does not sua sponte give the required limiting instruction when Mississippi Rule of Evidence 404(b) evidence is admitted.” Id. at 1240 (¶ 22). “An error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty.” Floyd v. City of Crystal Springs, 749 So.2d 110, 120(¶ 37) (Miss.1999).
¶25. In contrast to the Webster case involving evidence of prior acts or crimes, the present case concerns testimony given. The State questioned Anderson concerning whether or not she was told to lie by defense counsel. The record reflects that defense counsel objected and said that “unless he can prove somebody—that I told somebody to lie.” There was no objection based upon the need for the court to conduct a Mississippi Rule of Evidence 403 balancing test. The trial court overruled the objection in allowing the question about possible lying. After the defense objected, the prosecution indicated that it would accept the challenge of the defense by presenting an additional witness on the *95 issue. When Joe Smith testified, he confirmed that Anderson had told him that she felt the defense attorney, Mr. Walls, was pressuring her to testify about something that she had not said. Smith was cross examined by defense counsel and Smith was neither impeached nor contradicted.
¶ 26. When this issue was brought up in Harris’s motion for a mistrial or in the alternative, to set aside the verdict of the jury, the trial judge responded by stating, “I think the way it ended up and the explanation made by the prosecution removed any claim by them that you [defense counsel] actually did this and was solely for the impeachment of the witness.” In this case, we hold that harmless error analysis is applicable in cases where the trial court does not sua sponte give the required limiting instruction when Rule 404(b) evidence is admitted. Webster, 754 So.2d at 1240(¶ 22). In the present case, the evidence of Harris’s guilt was overwhelming, and therefore, we find that this issue is without merit.
¶ 27. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH WRITTEN OPINION JOINED BY IRVING, J. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J.