IRVING, P.J.,
dissenting:
¶ 38. The majority finds that the chancery court did not err in awarding custody of Richard’s son, Blake, to Cliff, Blake’s half brother. Because I believe that the chancery court failed to give appropriate deference to the natural-parent presumption, I dissent. I would reverse the chancery court’s judgment and remand this case for a determination of whether Richard is an unfit parent or has abandoned Blake. I also believe that Richard did not have proper notice of the hearing wherein his custody of Blake was terminated and transferred to Cliff. Therefore, for this additional reason, I dissent.
¶ 39. After the chancery court granted Richard’s writ of habeas corpus and ordered Cliff to return Blake to Richard, Cliff filed a motion to reconsider and a *801 motion for emergency injunctive relief. On June 7, 2010, the chancery court held a hearing on the motions; however, neither Richard nor his attorney appeared at the hearing. Despite their absence, the chancery court proceeded with the hearing and determined that it was in Blake’s best interest to remain with Cliff.
¶40. In my judgment, the chancery court failed to give appropriate deference to the natural-parent presumption before it awarded custody of Blake to Cliff. The law regarding custody disputes between natural parents and third parties is well settled:
In custody battles involving a natural parent and a third party, it is presumed that a child’s best interest will be served by placement in the custody of his or her natural parent, as against any third party. In order to overcome this presumption[,] there must be a clear showing that the natural parent has (1) abandoned the child; (2) the conduct of the parent is so immoral as to be detrimental to the child; or (3) that the parent is unfit mentally or otherwise to have custody.
Sellers v. Sellers, 638 So.2d 481, 484 (Miss. 1994) (citations omitted). Based on my review of the record, there was no clear showing that Richard was an unfit parent or had abandoned Blake.
¶ 41. At the June 7, 2010 hearing, John Sizemore, Richard’s father, testified that it was in Blake’s best interest to live with Cliff. The chancery court pressed John for the basis for his opinion, and the following exchange occurred:
[THE COURT]: Mr. Sizemore, what can you tell me about where you think this child needs to be?
[JOHN]: This child needs to be in Colorado with his brother.
[THE COURT]: Why would you say that? You live in Gulfportf, Mississippi]?
[JOHN]: I live in Gulfport, but Blake would be much happier where he is. Roberta and I[,] at our age[,] are not ready to take care of a child again.
[THE COURT]: Well, you appear to be healthy to me[,] and you probably could do it. How long has Blake been living in Colorado?
⅝ ⅜ ⅝
[JOHN]: Shortly after his mother died. Shortly — he was there during [Hurricane] Katrinaf,] and he left [in] October — right after [Hurricane] Katrina. * * ⅜
[THE COURT]: So has [Cliff] been caring for Blake since his mother died?
[JOHN]: Yes, sir.
[THE COURT]: Why does [Richard] want custody of this child?
[JOHN]: Honestly?
[THE COURT]: Yes, sir.
[JOHN]: I think there is some money involved.
[THE COURT]: What money?
[JOHN]: He’s on disability[,] and if he gets custody of [Blake,] he can also get the other benefits that goes [sic] with it.
¶ 42. While John thought that Blake should remain with Cliff, he offered no explanation for his opinion other than speculation that Richard might be seeking custody to obtain additional social security benefits. He offered no testimony regarding Richard’s fitness as a parent, nor did he testify that Richard had abandoned Blake.
¶43. The chancery court also questioned Roberta Sizemore, Richard’s stepmother, regarding Richard’s relationship with Blake:
*802 [THE COURT]: Mrs. Sizemore, is [Cliff] a better parent than [Richard]?
[ROBERTA]: Yes, sir.
[THE COURT]: How do you know?
[ROBERTA]: Because we have seen his natural father [Richard]. We have not seen Cliff because he is in Colorado. We have seen his natural father and—
[THE COURT]: That is your son? The natural father is your son; isn’t that right? Is he your son?
[ROBERTA]: I am the stepmother.
Roberta offered no testimony that Richard was an unfit parent. She stated that she believes that Cliff is a better parent than Richard, but that does not answer the question of whether Richard is an unfit parent. Furthermore, Roberta admitted that she had never witnessed Cliffs parenting skills because he lives in Colorado.
¶ 44. Finally, the chancery court questioned Cliff regarding Blake’s best interest:
[THE COURT]: Is there anything that you need to tell me that you want to tell me that I should know?
[CLIFF]: When you make your decision, you know, my dad, again he is my stepfather, Richard Sizemore. I am concerned [that] if he were to go back and live with him[ — ] I think the environment would be very difficult because my dad has a drinking problem. He was an abusive alcoholic my entire growing up [sic] life. I would be very concerned for Blake if he were to be placed back in that environment.
He spent a couple of months there and called us crying and begging us to get him out of there. That is what started this whole mess. Once he came back[,] they started to fight us to get Blake back again. It would be disastrous to send him back there. I just hope you see that we can offer Blake a more stable environment. We love him and want the best for him.
¶ 45. While Cliff testified that Richard was an abusive alcoholic during Cliffs childhood, there was no evidence in the record that Richard had abused Blake. The chancery court did not question Cliff further regarding his allegations that Richard was an abusive alcoholic, nor did it ask Cliff to elaborate regarding his opinion that Richard could not provide a stable home environment for Blake. Finally, Cliffs attorney stated that the Mississippi Department of Corrections web site listed Richard as being on house arrest, but the web site did not list the offense. In my judgment, Cliffs testimony, along with his attorney’s statement,[27] does not rise to the level of a “clear showing” that Richard is an unfit parent.
¶ 46. Based on my review of the record, the chancery court failed to give appropriate deference to the natural-parent presumption, as required under well-established Mississippi law, before awarding custody of Blake to Cliff. As stated, the testimony offered at the June 7, 2010 hearing does not provide a “clear showing” that Richard is an unfit parent or has abandoned Blake. Accordingly, I would reverse the chancery court’s judgment and remand this case for a determination of whether Richard is an unfit parent or has abandoned Blake.
¶ 47. Furthermore, it does not appear that Richard had proper notice of the June 7, 2010 hearing. Following the chancery court’s decision to grant Richard’s writ of *803 habeas corpus, Cliff filed a motion to reconsider. The motion was set for a hearing on January 5, 2010. However, on January 5, 2010, the chancery court entered an order resetting the hearing for June 7, 2010. At the June 7, 2010 hearing, Cliffs attorney explained that only he and Richard’s attorney were present on January 5, 2010, when the agreement to reset the hearing was made. There is no evidence in the record that Richard’s attorney ever communicated to Richard that the motion for reconsideration would be heard on June 7, 2010. However, as I explain in further detail later in this dissent, since Richard was then represented by an attorney, he was chargeable with knowledge of the June 7 hearing. Nevertheless, on June 4, 2010, Richard’s attorney filed a motion for a continuance of the June 7 hearing and mailed Richard a copy. Richard received the copy of the motion on June 5, 2010, which was a Saturday. Richard assumed that the hearing would be continued. However, he called the clerk’s office — apparently on the morning of the hearing — to confirm that the hearing had been continued. To his surprise, he was told that the continuance had not been granted and that the hearing “was on for Monday [at] 9[:00] a.m.” Since Richard had assumed that the hearing would be continued, he had not made any preparation to attend the hearing. Therefore, the earliest that he could have known that the hearing was not being continued was no more than one hour prior to the hearing, as the clerk’s office does not open until 8:00 a.m. Neither Richard nor his attorney appeared for the hearing.
¶48. On the morning of the hearing, Cliffs attorney advised the chancery court that Richard’s attorney was in trial in federal court. The chancery court stated that it could not take judicial notice of that fact but observed that trial settings of federal court cases generally trump trials of state court cases. Further, the chancery court acknowledged that someone had called on the morning of the hearing at approximately 8:05 and advised that Richard’s attorney would not be in court for the hearing.
¶ 49. “The law of agency generally imputes knowledge and information received by an agent in conducting the business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal.” Lane v. Oustalet, 878 So.2d 92, 95-96 (¶ 15) (Miss.2004) (citing Pittman v. Home Indent. Co., 411 So.2d 87, 89 (Miss.1982)). “The relationship between client and attorney ... is a quintessential principal-agent relationship.” O.W.O. Invs., Inc. v. Stone Inv. Co., 82 So.3d 439, 447 (¶22) (Miss. 2010) (quoting C.I.R. v. Banks, 543 U.S. 426, 436, 125 S.Ct. 826, 160 L.Ed.2d 859 (2005)). Accordingly, because Richard’s attorney knew about the June 7, 2010 hearing, Richard would generally be imputed with the same knowledge. However, Richard’s attorney had expressed a desire to dissolve the attorney-client relationship, in so much as he had filed a motion to withdraw on April 23, 2010. However, there is no indication in the record that the motion to withdraw had ever been noticed for hearing or that Richard had reason to believe that he was no longer represented by an attorney.[28]
¶ 50. The Mississippi Supreme Court has stated: “Even though the result might be the same[,] every defendant or respondent has the right to notice in a court proceeding involving him, and to be pres *804 ent, and to introduce evidence at the hearing.” Johnson v. Weston Lumber & Bldg. Supply Co., 566 So.2d 466, 468 (Miss.1990) (quoting Edwards v. James, 453 So.2d 684, 686 (Miss.1984)). In Johnson, our supreme court held that the chancery court erred in refusing to set aside its judgment against Harold Johnson where his counsel withdrew on the same day that the cause was tried; Johnson was not present at trial; and there was no indication that Johnson knew to be present. Id. at 468.
¶ 51. The facts in Johnson are similar to the facts in this case. Richard’s attorney filed a motion to withdraw, which the chancery court granted nunc pro tunc to June 7, 2010. By doing so, the chancery court effectively left Richard without representation at the hearing. In my judgment, the chancery court erred in proceeding with the hearing where Richard did not have adequate notice and his retained attorney failed to appear, apparently because of a conflict with a trial setting in federal court. For the reasons presented, I would reverse the chancery court’s judgment and remand this case for further proceedings.

. The attorney's statement carries no eviden-tiary weight, as he was not a witness.

. The record indicates that an agreed order (signed by the attorneys for the parties and the court) granting the motion to withdraw was filed on July 30, 2010, nunc pro tunc to June 7, 2010. Interestingly, Richard was not a signatory to this agreed order.